### The UNITED STATES v. KLINTOCK.

A commission issued by Aury, as "Brigadier of the Mexican republic," (a republic whose existence is unknown and unacknowledged,) or as "Generalissimo of the Floridas," (a province in the possession of Spain,) will not authorize armed vessels to make captures at sea.

*Quære*—Whether a person acting with good faith under such a commission may be guilty of piracy?

However this may be, in general; under the particular circumstances of this case, showing that the seizure was made, not *jure belli*, but *animo furandi*, the commission was held not to exempt the prisoner from the charge of piracy.

The act of the 30th of April, 1790, c. 36. s. 8. extends to all persons, on board all vessels, which throw off their national character by cruizing piratically, and committing piracy on other vessels.

THIS was an indictment in the Circuit Court of Virginia, against Ralph Klintock, a citizen of the United States, charging him with a piracy committed on the high seas, in April, 1818, on a vessel called the Norberg, belonging to persons to the jurors unknown. He was found guilty generally.

The facts stated were, that the prisoner is a citizen of the United States; that the vessel in which he sailed as first lieutenant was called the Young

Spartan; was owned without the United States, and cruized under a commission from Aury, styling himself Brigadier of the Mexican Republic and Generalissimo of the Floridas, granted at Fernandina, after the United States' government took possession of it. That he was convicted of a piracy, committed on the Norberg, a Danish vessel, in consequence of practising the following fraud upon her. The second officer of the privateer brought on board some Spanish papers, which he concealed in a locker, and then affected to have found them on board. The vessel was then taken possession of, the whole original ship's company left on an island on the coast of Cuba, and the second officer being put in command, took the name of the original captain, sailed for Savannah, and entered her there, personating the Danish captain and crew. The Young Spartan followed, and put into a port in the vicinity.

The counsel for the prisoner moved, that the judgment be arrested on the following grounds:

First, That Aury's commission exempts the prisoner from the charge of piracy.

Second, That the fraud practised on the Dane does not support the charge of piracy, as an act piratically done, and not in the exercise of belligerent rights.

Third, That the prisoner is not punishable under the provisions of the 8th section of the act of 1790.[a]

a Which provides, " That if any person or persons shall commit, upon the high seas, or in any river, haven, basin, or

1820.

U. States
v.
Klintock.

Fourth, That the act of the 30th of April, 1790, 8th section, " entitled an act for the punishment of certain crimes against the United States," does not extend to an American citizen entering on board of a foreign vessel, committing piracy upon a vessel exclusively owned by foreigners.

Upon these errors in arrest of judgment, the judges of the Circuit Court were divided in opinion, and directed the points, with their division thereon, to be certified to this Court.

Feb.14th.

The *Attorney General,* for the United States, argued, I. That although the government and Courts of the United States had acknowledged the fact of the existence of the new States in Spanish America, so as to legitimate the war between them and the pa-

bay, out of the jurisdiction of any particular State, murder or robbery, or any other offence, which, if committed within the body of a county, would by the laws of the United States, be punishable with death ; or if any captain or mariner of any ship or other vessel, shall piratically and feloniously run away with such ship or vessel, or any goods or merchandize to the value of fifty dollars, or yield up such ship or vessel voluntarily to any pirate ; or if any seaman shall lay violent hands upon his commander, thereby to hinder and prevent his fighting in defence of his ship, or goods committed to his trust, or shall make a revolt in the ship ; every such offender shall be deemed, taken, and adjudged to be a pirate and felon, and being thereof convicted, shall suffer death : and the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular State, shall be in the district where the offender is apprehended, or into which he may be first brought."

rent country,[a] yet Mexico was not among the provinces in actual revolt, nor was any such State *de facto*, known to exist as the Mexican republic, under the authority of which the commission in question was issued. And even if there were such a power in existence exercising all the rights of war, Denmark is not at war with it, or with any other of the Spanish American provinces. 2. Although the fraud practised on the Dane, may not be in itself an act of piracy, yet the seizure was a piratical act; and the ingredient of fraud cannot change its character for the better. 3. Neither is the prisoner protected by the decision of this Court in the case of the United States v. Palmer.[b] That case merely decides, that the crime of robbery committed on board a ship belonging to subjects of a foreign power, by a foreigner, is not piracy, within the act of the 30th of April, 1790, c. 36. s. 8. But it does not decide, that the same offence, committed by a citizen, on board of a vessel not belonging to the subjects of any foreign power, is not piracy. The vessel on board of which the crime was committed, does not belong to any particular nation. A pirate, being *hostis humani generis*, is of no nation or State. He, and his confederates, and the vessel on board of which they sail, are outcasts from the society of nations. All the States of the world are engaged in a tacit alliance against them. An offence committed by them against

a The Divina Pastora, 4 *Wheat*. 52. 65. note *a*, and the cases there collected. The Estrella, *Ib*. 298. The Neustra Senora de la Caridad, *Ib*. 497.

b 3 *Wheat*. 610. 630.

any individual nation, is an offence against all. It is punishable in the Courts of all. So, in the present case, the offence committed on board a piratical vessel, by a pirate, against a subject of Denmark, is an offence against the United States, which the Courts of this country are authorized and bound to punish.

Mr. *Winder*, contra, contended, that this case was decided by that of the United States v. Palmer. The only argument which can be urged for extracting this case out of that decision is, that the prisoner, in the present case, is a citizen of the United States, although the offence itself was committed on board of a foreign vessel. But the whole reasoning of the Court in Palmer's case, as well as the certificate of the judgment, shows, that in order to constitute the offences enumerated in the statute, it is indispensably necessary, not that the party should be a citizen, but that the vessel against which, and the vessel on board of which the offence is committed, should belong to citizens. It is insisted on the other side, that although the vessel now in question, does not belong to citizens of the United States, yet she does not belong to any particular foreign nation; and, therefore, does not fall within the letter of the authority referred to. But if by her not belonging to any particular foreign State, it be meant that she is a piratical vessel, then the case falls within the late act of 1819, providing for the punishment of piracy as defined by the law of nations, and not within the act of 1790. If it

falls within the act of 1790, then the act of 1819 is
entirely superfluous. But that act was made to pro-
vide for the very defect in the former law which was
for the first time discovered in the case of Palmer;
and it is impossible, consistently with the authority
of that case, to bring the present case within the sta-
tute, which was the only law in force, on the subject,
at the time when this offence was committed.

Mr. Chief Justice MARSHALL delivered the opi-
nion of the Court. The first and second points
made by the counsel for the prisoner may be consi-
dered together.

As judgment can be arrested only for errors appa-
rent on the record, we should feel no difficulty
in certifying our opinion of the insufficiency of
these on that ground, were we not persuaded that
from some inattention, the questions which arise
properly on a motion for a new trial, have been stated
by the clerk as a motion in arrest of judgment, and
that the same points, if undecided now, will recur
when judgment is about to be pronounced. In a
criminal case especially, we think it proper to decide
the question on its real, as well as technical merits.

So far as this Court can take any cognizance of
that fact, Aury can have no power, either as Briga-
dier of the Mexican Republic, a republic of whose
existence we know nothing, or as Generalissimo of
the Floridas, a province in the possession of Spain,
to issue commissions to authorize private or public
vessels to make captures at sea. Whether a person
acting with good faith under such commission, may
or may not, be guilty of piracy; we are all of opi-

nion that the commission can be no justification of the fact stated in this case. The whole transaction taken together, demonstrates that the Norberg was not captured *jure belli,* but seized and carried into Savannah *animo furandi.* It was not a belligerent capture, but a robbery on the high seas. And although the fraud practised on the Dane may not of itself constitute piracy, yet it is an ingredient in the transaction which has no tendency to mitigate the character of the offence.

The opinion of this Court in the case of the *U. States v. Palmer, ante,* vol. III. *p.* 610, commented on and explained.

The third and fourth errors assigned in arrest of judgment may also be considered together. The questions they suggest arise properly on the indictment, and require a reconsideration of the opinion given by the Court in Palmer's case.

The question propounded to the Court in that case was in these words: "Whether the crime of robbery, committed by persons who are not citizens of the United States, on the high seas, on board of any ship or vessel belonging exclusively to the subjects of any foreign State or sovereignty, or upon the person of any subject of any foreign State or sovereignty, not on board of any ship or vessel belonging to any subject or citizen of the United States, be a robbery or piracy within the true intent and meaning of the said 8th section of the act of Congress, aforesaid, and of which the Circuit Court of the United States hath cognizance, to hear, try, determine, and punish the same?"

The same question was again propounded, so varied only as to comprehend the offence if committed

by American citizens in a vessel belonging to fo-
reigners.

The Court, in concluding its exposition of the act,
thus sums up its opinion : " The Court is of opinion,
that the crime of robbery, committed by a person on
the high seas, on board of any ship or vessel belong-
ing exclusively to subjects of a foreign State, on
persons within a vessel belonging exclusively to sub-
jects of a foreign State, is not a piracy within the
true intent and meaning of the act for the punish-
ment of certain crimes against the United States."
The certificate of the Court conforms entirely to this
opinion.

This opinion and certificate apply exclusively to
a robbery or murder committed by a person on board
of any ship or vessel belonging exclusively to sub-
jects of a foreign State. It is, we think, the obvious
import of these words, that, to bring the person com-
mitting the murder or robbery within them, the ves-
sel on board which he is, or to which he belongs, must
be at the time, in point of fact, as well as right, the
property of the subjects of a foreign State, who must
have at the time, in virtue of this property, the con-
trol of the vessel. She must at the time be sailing
under the flag of a foreign State, whose authority is
acknowledged. This is the case which was present-
ed to the Court ; and this is the case which was de-
cided. We are satisfied that it was properly decided.
But the reasoning which conducted the Court to
this conclusion, is founded on sections of the act, the
general words of which ought to be restricted to
offences committed by persons who, at the time of

1820.

U. States
v.
Klintock.

U. States
v.
Klintock.

The act of the 30th of April, 1790, c. 36. s. 8. extends to all persons, on board of all vessels, which throw off their national character by cruizing piratically.

committing them, were within the ordinary jurisdiction of the United States; and the language employed may well be understood to indicate an opinion that the whole act must be limited in its operation to offences committed by, or upon, the citizens of the United States. Upon the most deliberate reconsideration of that subject, the Court is satisfied, that general piracy, or murder, or robbery, committed in the places described in the 8th section, by persons on board of a vessel not at the time belonging to the subjects of any foreign power, but in possession of a crew acting in defiance of all law, and acknowledging obedience to no government whatever, is within the true meaning of this act, and is punishable in the Courts of the United States. Persons of this description are proper objects for the penal code of all nations; and we think that the general words of the act of Congress applying to all persons whatsoever, though they ought not to be so construed as to extend to persons under the acknowledged authority of a foreign State, ought to be so construed as to comprehend those who acknowledge the authority of no State. Those general terms ought not to be applied to offences committed against the particular sovereignty of a foreign power; but we think they ought to be applied to offences committed against all nations, including the United States, by perons who by common consent are equally amenable to the laws of all nations.

CERTIFICATE.—This cause came on to be heard on the transcript of the record from the Circuit Court

for the District of Georgia, and was argued by counsel. On consideration whereof, this Court is of opinion :

1st. That Aury's commission does not exempt the prisoner from the charge of piracy.

2d. That although the fraud practised on the Dane may not in itself support the charge of piracy, the whole transaction, as stated in the indictment and in the facts inserted in the record, does amount to piracy.

3d. That the prisoner is punishable under the provisions of the 8th section of the act of 1790.

4th. That the act of the 30th of April, 1790, does extend to all persons on board all vessels which throw off their national character by cruizing piratically and committing piracy on other vessels.