Curia, per

O’Neall, J.
The different grounds of the prisoner’s motion have received from the Court a deliberate consideration, and it is now my duty to give the judgment upon them. This shall be done in as few words as possible.
The first ground objects to the manner in which the indictment describes the instrument forged, “ a warrant and order,” when the Acts of 1736-7, and of 1801, speak of “a warrant or order.” I had, on the trial below, and I have now, no doubt that the indictment sets it out properly. The Legislature employed two words to describe the same thing. A warrant for the payment of money or the delivery of goods, is an order, and an order for the same purpose is also a warrant.
Indeed, the manner in which they are used in the Acts : “Any warrant or order for the payment of money or delivery of goods,” shows that one instrument was intended to be described. The same thing is supposed to be accomplished by either, and hence having the same effect, they must have the same meaning. They are synonymous, and have been always so regarded. In The State vs Holly, (1 Brev. 37,) decided in 1800, *by Waties, Bay, Johnson, Ramsey, and Trezivant, it was said, “ that the obvious meaning of the words ‘ warrant or order’ in the sense used in the indictment, cannot be fairly misunderstood, the words being evidently intended to express the very same thing.” And they held, although in that case they were used disjunctively, “ warrant or order,” yet that the indictment was good. It is clear, beyond all doubt, if they mean the same thing, they ought to be laid conjunctively, and «sing them otherwise might be objected to.
The second ground objects that the forged instrument is described as a “paper writing,” when it is partly printed and partly written. There is unquestionably nothing in this ground. An instrument signed by a *158 party is, in legal parlance, the paper writing of such a party. It is his signature to it which gives it that character, and not the body of the instrument. In a declaration on a note of hand, it is described as a note in writing, although every word, except the signature, may be in print. So of a bond partly written and partly printed, it is said to be “the writing obligatory” of the party executing it The manner in which an instrument forged is to be set out is well settled. In 3 C. L. 1040, it is said “ every indictment for forgery must set forth the instrument charged as fictitious, in words and figures, so that the Court may be able to judge from the record, whether it is an instrument in respect of which forgery can be committed.” This ride is fully complied with in this case, for the warrant and order is exactly set out. The same author, at the same page, says “though it is sufficient to aver that the defendant forged a certain writing, describing it truly, and setting forth its tenor, it seems more proper to lay it as a certain paper writing, purporting to be one that the statute on which the indictment is framed, describes.” The instrument in this case is described in the very words used in this case. I have looked into Waters’ case, 3 Brev. (507, An.,) and have been permitted to examine the indictment on file in the clerk’s office ; the bank note in that case was not described as partly printed and partly written. That indictment was drawn by Mr. Justice llichardson, then Attorney-General, and the prisoner defended by Mr. Wilson, one of the counsel for the prisoner now before us. No objection was taken to the indictment on that account. The only case in which I have observed that the instrument was ^described as partly printed and partly written, is the case of Rex vs. Wilcox, 1 Eng. Crown Ca. 50.) In that case the judgment was notwithstanding arrested, because the indictment did not state what the instrument was of which the forgery was alleged to have been committed, nor how the party signing it had authority to sign it.
The third ground insists that the indictment does not set out that the party whom it is intended to defraud, if a corporation, was in the United States, or within this State, or if a person, was resident in this State, or within the United States. This particularity is supposed to be necessary, under the Act of 1801, (2 Faust, 379,) which in the first section provides “that if any person, from and after the passing of this Act, shall, within this State, falsely make, forge or counterfeit, or willingly act or assist in the false making, forging or counterfeiting, of any deed, will, testament, bond, writing obligatory, bill of exchange, promissory note for payment of money or delivery of goods, bank note, for payment of money, of any incorporated or unincorporated bank or company within this State or any of the United States, or any endorsement or assignment of any bill of exchange or promissory note for payment of money, or of any bank note for the payment of money, of any incorporated or unincorporated bank or company within this State or any of the United States, or any acquittance or receipt, either of money or goods, or any acceptance of any bill of exchange, or the number or principal sum of any promissory note or bank note, for the payment of money, of any incorporated or unincorporated bank or company, in this State or any of the United States, or the number or principal sum of any accountable receipt for any note, bill or other security for the payment of money, or any warrant or *159 order for the payment of money, or delivery of goods, with intention to defraud any person or persons residing or being within this State or any of the United States, or any bank or company, corporated or unincorporated, within this State or any of the United States, or the President or any other officer of any such bank or company, then every such person, being lawfully thereof convicted, shall be deemed guilty of felony, and shall suffer death, as a felon, without benefit of clergy.” Two questions here arise, under this Act ; 1st. Is it necessary to set out the indictment that the bank or person intended *to be defrauded, is within this State, or some other of the United States ; 2nd. Is the Act of 1801 a repeal of the Act of 1736-7 ? and if it is not, are not the 3d and 5th counts good under it? and the 1st count under the Act of 1801 ? admitting it to require that the bank to be defrauded should appear, from the indictment, to be in this State, or some other of the United States. In passing upon the first question, I would first remark that on examining Waters’ indictment, it seems that the learned attorney who drew it, alleged that the bank note then forged, was so forged with intent to defraud an incorporated bank within this State, and in another count a person within this State. This is the only precedent to which I have had access, andas that offence had to be covered by the Act of 1801, or not be punished capitally, I have no doubt it was so cautiously drawn from the decision in HouseaVs case, to which I shall presently refer. My brothers, Evans and Earle, and Chancellor Johnson, who long filled the office of Solicitors, agree that no such particularity was resorted to by them. In Houseal’s case, (2 Brev. 219,) the Judges held that “the offences charged in the indictment, are not pursuant to the Act of Assembly of 1801, and are not within the scope or intent of that Act, because the persons intended to be defrauded are not stated to be within any of the United States.” This, I confess is a decision on the point now before us, although it is not, perhaps conclusive authority, inasmuch as that point was not necessary to the decision of the cause. That decision out of the way, I should not hesitate to say, that there is no necessity to set out that the bank or person intended to be defrauded is within the State. It is no portion of the definition of the offence ; and when a forgery is charged to be in fraud of a bank, or an individual, it is to be inferred that they are within the State, unless the contrary be alleged. If the proof does not correspond with the indictment, as understood or expressed, the prisoner would be acquitted. But I yield my own judgment to that decision, and it is therefore necessary to inquire whether the Act of 1801 is a repeal of the Act of 1736-7. Act of 1136-7, sec. 3, (P. L. 147.) The latter is more general in the respect in which we are considering it than the former. It provides, inter aha, that “ to falsely make, forge or counterfeit any warrant or order for the payment of money or delivery of goods, with the intention to defraud any *person,” shall be a felony. By comparing the two Acts, it will be found that that part of the Act of 1801 which relates to banks atid companies, corporated or uneorporated, is not within the Act of 1736-7 ; and that the Act of 1801 is more restricted as to the person to be defrauded than the Act of 1736-7. The Act of 1801 contains no repealing clause, and can therefore, only be a repeal of the former Act, by implication. This is not favored, and unless there was some *160 contradictory or repugnant provisions, there cannot be any implication of repeal. There is nothing of this kind ; the two Acts may well stand together; the latter applying to its peculiar subject, and the former governing those falling within its provisions. They cannot be construed in pari materia, for they do not entirely relate to the same subject matter. This point, however, was expressly adjudged in Houseal’s case, (2 Brev. 222,) and if that case is authority for the precision with which the offence must be laid, under the Act of 1801, it must also be for the non-repeal of the Act of 1736-7. In it, the Judges said, it does not appear to us that these two Acts are repugnant or contradictory, or so inconsistent as that they may not well stand together. The latter, to be sure, is more limited and confined in its operation, than the former; but there does not seem to be any necessity for construing this latter so as to operate the repeal of the former ; nor would there be any propriety in so doing. The Acts of Congress of 1790 and 1819, were passed on the same subject, (piracy;) they differed in some of their provisions ; they were both held to be in force ; Klintock was adjudged to be within the Act of 1790, and Smith within that of 1819, (5 Wheat. 144, 153.) The Act of 1736-7 being in force, the 3d and 5th counts are so framed as to bring the prisoner within its provisions, and, as was ruled in Houseal’s case, his conviction on those counts must be sustained under it.
The first count, however, charges the forgery to be with intent to defraud the Bank of Charleston, South Carolina, and this must be sustained under the Act of 1801, or fail. I think, however, that this count is sufficiently framed to be supported under that Act. It is sufficient, if it appear to be an incorporated bank within this State. The Bank is described by its corporate name, the Bank of Charleston, South Carolina, which sufficiently shows that it is a bank within this ’■‘State. It is, too, incorporated by a public Act, and we are judicially to take notice and be informed of this fact, and there is, therefore, no necessity for more than the designation of the bank by its name. The first count is therefore sufficient.
The fourth ground contends that the first count is defective, as it alleges the intention to defraud the Bank of Charleston, and the tenor of the forged warrant and order for the payment, shows that it was made to defraud the cashier. There is nothing in this ground. The intent of the forged writing is to withdraw the funds of the supposed signer from the bank, and this makes it a fraud intended upon it. The cashier is a mere officer representing the bank, and a paper drawn upon him as such, is drawn upon the bank. If the teller had paid the forged warrant or order in this case, the bank must have lost the credit of so much in a settlement with Mr. Tupper, the supposed drawer. It may be that the bank might have compelled the officer making the payment to refund, and thus replace its loss. Still this does not prevent the fraud from being of the bank and not the officer.
The fifth ground alleges that the third count is defective, inasmuch as it supposes that it sets out the forged writing as purporting to be of Tristram Tupper, when the tenor shows that it was of T. Tupper. This ground was framed upon the fourth ground, which was sustained as fatal to the indictment, in Houseal’s case. But unfortunately for the prisoner, his ground here is founded in mistake ; the indictment in the third count *161 does not set out the paper writing as purporting to be the warrant and order of Tristram Tupper, but as purporting to be a warrant and order for the payment of money, and then sets out in hcec verba, and avers the prisoner’s intention to be to defraud Tristram Tupper. There is no variance here, and the count is well framed.
See 3 Rich. 172. An.
The sixth ground is a mere variety of the fifth, and was intended to apply to the facts. The jury found that the paper signed T. Tupper, was intended to represent Tristram Tupper, and thus to defraud him, and the proof too well sustains their conclusion.
The seventh ground supposes there was no proof where the warrant and order was made. It is only necessary to read and understand the report, to see that here again the prisoner *has no just ground of complaint. Two facts were ascertained ; it purports to be made in Charleston, and the prisoner was in Charleston at its date, and had it in possession. These were enough to show where it was made.
The eighth ground supposes there was error in saying to the jury, that if the prisoner was guilty in fact, his conviction might be sustained under the Act of 1736-7, the Act of 1801, or at common law. There certainly cannot be any doubt upon this, as a legal proposition, but as it is questioned, in proof of its accuracy, I will refer to Houseal’s case, (2 Brev., 219,) and to Foster’s case, (3 McC., 442.) The prisoner’s motion is dismissed.
Evans, Eabze and Butler, JJ-, concurred. Gantt and Richardson, JJ., dissented.