(LAW OF NATIONS. CONSTITUTIONAL LAW.)

## THE UNITED STATES v. HOLMES *et al.*

The Courts of the United States have jurisdiction under the act of the 30th of April, 1790, c. 36. of murder or robbery committed on the high seas, although not committed on board a vessel belonging to citizens of the United States, as if she had no national character, but was held by pirates, or persons not lawfully sailing under the flag of any foreign nation.

In the same case, and under the same act, if the offence be committed on board of a foreign vessel by a citizen of the United States, or on board a vessel of the United States by a foreigner, or by a citizen or foreigner on board of a piratical vessel, the offence is equally cognizable by the Courts of the United States.

It makes no difference in such a case, and under the same act, whether the offence was committed on board of a vessel, or in the sea, as by throwing the deceased overboard and drowning him, or by shooting him when in the sea though he was not thrown overboard.

THE prisoners were indicted at the Circuit Court of Massachusetts, at the October term of said Court, 1818, for that the prisoners being citizens of the United States, on the fourth day of July then last past, with force and arms, upon the high seas, out of the jurisdiction of any particular State, in and on board a certain schooner or vessel, the name whereof being to the jurors unknown, in and upon a person known, and commonly called by the name of Reed, a mariner, in and on board said vessel, in the peace of God, and of the said United States, then and there being, piratically, &c., did make an assault; and that they, the said William Holmes, Thomas Warrington,

otherwise called Warren Fawcett, and Edward Rosewain, with a certain steel dagger, &c. which he, the said William Holmes, in his right hand, then and there had and held, the said person commonly called Reed, in and upon the arms and breast of him, the said Reed, upon the high seas, and on board the vessel aforesaid, and out of the jurisdiction of any particular State, piratically, &c. did strike and thrust, giving to the said person commonly called Reed, in and upon the arms and breast of him, the said Reed, upon the high seas, in and on board the vessel aforesaid, and out of the jurisdiction of any particular State, piratically, &c. in and upon the said arms and breast of him, the said Reed, several grievous wounds, and did then and there in and on board the vessel aforesaid, upon the high seas, and out of the jurisdiction of any particular State, piratically, &c. him, the said person commonly called Reed, cast and threw from out of said vessel into the sea, and plunge, sink, and drown him, in the sea aforesaid, of which said grievous wounds, casting, throwing, plunging, sinking, and drowning, the said person commonly called Reed, upon the high seas aforesaid, out of the jurisdiction of any particular State, then and there instantly died.

And so the jurors aforesaid, upon their oath aforesaid, do say, that the said William Holmes, &c. him, the said person commonly called Reed, then and there, upon the high seas as aforesaid, and out of the jurisdiction of any particular State, piratically, &c. did kill and murder, against the peace and dignity of the said United States, and against the form of the

statute of the said United States, in such case made and provided, &c. Upon which indictment the prisoners were found guilty of the offence charged therein. And, thereupon, the counsel for the prisoners moved the Court for a new trial for the misdirection of the Court upon the points of law which had been raised at the trial. And upon arguing the said motion for a new trial, the several questions occurred before the Circuit Court, which are stated in the opinion of this Court, upon which the opinions of the judges of the Circuit Court were opposed.

From the evidence it appeared that a vessel, apparently Spanish, (whose national character, however, was not distinctly proved by any documentary evidence, or by the testimony of any person conusant of its character,) was captured by two privateers from Buenos Ayres, a prize crew put on board, and the prisoners were of that prize crew. One of the prisoners was a citizen of the United States, and the other prisoners were foreigners. The crime was committed by the prisoners on the person whose death was charged in the indictment, by drowning him on the high seas, he being, at the time, a prize master of the captured vessel, and thrown or driven overboard by the prisoners. There was no proof who were the owners of the privateers, nor where they resided, nor what were the ships' papers or documents, nor where, nor at what time, they were armed or equipped for war. The privateers had been at Buenos Ayres, and openly kept a rendezvous there, and shipped the crews there. The crews consisted chiefly of Englishmen, Frenchmen, and Ame-

ricans. The commander of one of the privateers was, by birth, a citizen of the United States, and had a family domiciled at Baltimore. The commander of the other was by birth an Englishman, but had long been domiciled at Baltimore. There was no proof that either of them had ever lived at Buenos Ayres, or been naturalized there. All the witnesses agreed that both the privateers were built at Baltimore. They had been at Buenos Ayres, before their sailing on this cruise, but a short time, one about six weeks, the other a few days only.

1820.

U. States
v.
Holmes.

And the said Judges being so opposed in opinion upon the questions aforesaid, the same were then and there, at the request of the district attorney for the United States, stated, under the direction of the Judges, and ordered by the Court to be certified under the seal of the Court to this Court, to be finally decided.

This case was argued by the *Attorney General* for the United States, and by Mr. *Webster* for the prisoners, upon the same grounds which are stated in the argument of the preceding cases of the United States v. Klintock,[a] the United States v. Smith,[b] and the United States v. Furlong *et al.*[c]

*Feb.* 14th.

Mr. Justice WASHINGTON delivered the opinion of the Court. This case comes before the Court upon a division of opinion of the Judges of the Circuit Court for the district of Massachusetts. The defendants are indicted for murder committed on the

*March* 15th.

a *Ante*, p. 144.    b *Ante*, p. 153.    c *Ante*, p. 184.

high seas; and the questions adjourned to this Court are,

1. Whether the Circuit Court had jurisdiction of the offence charged in the indictment, unless the vessel on board of which the offence was committed, was, at the time, owned by a citizen, or citizens of the United States, and was lawfully sailing under its flag.

2. Whether the Court had jurisdiction of the offence charged in the indictment, if the vessel on board of which it was committed, at the time of the commission thereof, had no real national character, but was possessed and held by pirates, or by persons not lawfully sailing under the flag, or entitled to the protection of any government whatever.

3. Whether it made any difference as to the point of jurisdiction, whether the prisoners, or any of them, were citizens of the United States, or that the offence was consummated, not on board of any vessel, but *in* the high seas.

4. Whether the burthen of proof of the national character of the vessel on board of which the offence was committed, was on the United States, or, under the circumstances stated in the charge of the Court, was on the prisoner.

The two first questions have been decided by this Court at its present session. In Klintock's case,[a] it was laid down, that to exclude the jurisdiction of the Courts of the United States, in cases of murder or robbery committed on the high seas, the vessel in which the offender is, or to which he belongs, must

*a Ante*, p. 144.

be, at the time, in fact, as well as in right, the pro-
perty of a subject of a foreign State, and in virtue
of such property, subject, at that time, to his con-
trol.  But if the offence be committed in a vessel,
not at the time belonging to subjects of a foreign
State, but in possession of persons acknowledging
obedience to no government or flag, and acting in
defiance of all law, it is embraced by the act of the
30th of April, 1790.   It follows, therefore, that mur-
der or robbery committed on the high seas, may be
an offence cognizable by the Courts of the United
States, although it was committed on board of a
vessel not belonging to citizens of the United States,
as if she had no national character, but was possessed
and held by pirates, or persons not lawfully sailing
under the flag of any foreign nation.

The third question contains two propositions,
1. As to the national character of the offender, and
not the person against whom it is committed ; and, 2.
As to the place where the offence is committed.

In respect to the first, the Court is of opinion,
and so it has been decided during the present term,
that it makes no difference whether the offender be
a citizen of the United States or not.   If it be com-
mitted on board of a foreign vessel by a citizen of
the United States, or on board of a vessel of the
United States by a foreigner, the offender is to be
considered, *pro hac vice*, and in respect to this sub-
ject, as belonging to the nation under whose flag he
sails.   If it be committed either by a citizen or a
foreigner, on board of a piratical vessel, the offence
is equally cognizable by the Courts of the United

States, under the above mentioned law. 2. Upon this point, the Court is of opinion, that it makes no difference whether the offence was committed on board of a vessel, or in the sea, as by throwing the deceased overboard and drowning him, or by shooting him when in the sea, though he was not thrown overboard. The words of the above act of Congress are general, and speak of certain offences committed upon the high seas, without reference to any vessel whatsoever on which they should be committed; and no reason is perceived why a more restricted meaning should be given to the expressions of the law, than they literally import. In the case of Furlong, for the murder of Sunley, decided during the present term of the Court, it was certified, that murder committed from on board an American vessel, by a mariner sailing on board an American vessel, by a foreigner on a foreigner, in a foreign vessel, is within the act of the 30th of April, 1790.[a] It follows from this, and the principles laid down in Klintock's case, that the same offence committed by any person *from on board* a vessel having no national character, as by throwing a person overboard, and drowning him, is within the same law.

It is stated, in the charge of the Court below, that it did not appear by any legal proof, that the privateers had commissions from Buenos Ayres, or any ship's papers or documents from that government, or that they were ever recognized as ships of that nation, or of its subjects; or who were the owners, where they resided, or when or where the privateers were armed or equipped. But it did appear

a *Ante*, p. 184.

in proof, that the captains and crew were chiefly Englishmen, Frenchmen, and American citizens; that the captains were both domiciled at Baltimore, where the family of one of them resided, and that he was by birth an American citizen. It was also proved, that the privateers were Baltimore built.

Under these circumstances, the Court is of opinion, that the burthen of proof of the national character of the vessel on board of which the offence was committed, was on the prisoners.

CERTIFICATE. This cause came on to be heard on the transcript of the record of the Circuit Court of the United States, for the district of Massachusetts, and on the questions on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court is of opinion:

1. That the said Circuit Court had jurisdiction of the offence charged in the indictment, although the vessel on board of which the offence was committed was not, at the time, owned by a citizen, or citizens of the United States, and was not lawfully sailing under its flag.

2. The said Circuit Court had jurisdiction of the offence charged in the indictment, if the vessel, on board of which it was committed, had, at the time of the commission thereof, no real national character but was possessed and held by pirates, or by persons not lawfully sailing under the flag, or entitled to the protection of any government whatsoever.

3. That it made no difference, as to the point of jurisdiction, whether the prisoners, or any of them,

were citizens of the United States, or whether the deceased was a citizen of the United States, or that the offence was committed not on board any vessel, but on the high seas.

4. That the burthen of proof of the national character of the vessel, on board of which the offence was committed, was, under the circumstances stated in the charge of the Court, on the prisoners.[a]