## Case No. 4,940.

FORMAN et al. v. MILLER et al.

[5 McLean, 218.] [1]

Circuit Court, D. Ohio. April Term, 1851.

Mr. Chase, for plaintiffs.
Mr. Fox, for defendants.

OPINION OF THE COURT. This suit is brought on a contract made between the parties, in which the defendants agreed to cut hogs enough to make fifteen thousand pounds of prime and mess pork. The declaration charges that the pork was badly put up, that many of the barrels were injured, and several of them fell short of the weight, and damage was claimed for meat not accounted for. The price for packing per barrel, and finding the salt, was fixed at one dollar and seventy cents; for selling shoulders per hundred pounds, sixteen cents; for selling hams, heads, and offal, two and a half per cent. Hams to be sold at four and one-half cents per pound, and lard at six and one-fourth cents. Rendering lard at thirty-three and one-third cents per one hundred pounds. And the defendants agree to give sixteen cents for each hog's head that may not be wanted in making prime pork. Six thousand shoulders were to be delivered to Holmes & Co., of Pittsburgh, they paying for the same $2.70 per hundred pounds. Plaintiff agreed to furnish the cash to make purchases. Defendants only to pack the number of barrels which the hogs purchased should fill.

It seems from a settlement that the number of barrels purchased amounted to twelve hundred and eighty-six. And the account was balanced. From the evidence it appeared that four hundred and seventy-three barrels were injured. And the court instructed the jury to inquire into the extent of the damages sustained by reason of any want of skill or care of defendants in packing the pork. The plaintiff's partner was present occasionally and witnessed the progress of the packing, and seemed to be well satisfied. And there is some evidence conducing to show that the plaintiff took the

responsibility of directing in what manner the pork should be put up. So far as this evidence may go, the jury will consider it. If the plaintiffs changed the ordinary mode of packing, thus far the defendants are not answerable for damages. But, it is to be presumed that the plaintiffs relied on the skill and knowledge of the defendants in the business of packing pork.

The pork was packed, it appears, for the New Orleans market. Several barrels were sold at Cincinnati as bad pork. About fourteen thousand two hundred and thirteen pounds were sold. The defendants sent down to Louisville, as the proceeds of the unsound barrels, one hundred and ninety-nine dollars. The shipments were made on the order of the plaintiffs. The above sums the plaintiffs refused to receive. Twenty-six barrels were claimed as not accounted for. This was ascertained from the amount of pork purchased, and the amount packed.

The jury were instructed they should ascertain the damages suffered by the plaintiffs from the sale of the unsound pork at Cincinnati, comparing it with the price of good pork at the same market. The sales of the pork at New Orleans to be compared in the same manner with the marketable price of a sound article. This will enable the jury to come to a satisfactory conclusion as to whether the pork was well put up at Cincinnati, that being the place of delivery, as to the injury, if any, the plaintiffs sustained. And if it shall appear that the loss was caused by a want of skill or care, or both, by the defendants, the plaintiffs will be entitled to the market price of good pork at Cincinnati, where the plaintiffs received the pork.

The defendants made no other contract than that the pork should be well put up, and it will be for the jury to say whether there was anything in the season, or in the transportation of it to New Orleans, which could have injured it, had it been well packed. In holding themselves out to the public as pork packers, the defendants were bound to use the skill in the business which such a business requires.

The jury found for the plaintiffs $2756.63.

At a subsequent day a motion for new trial was made by the defendants' counsel, and strenuously urged. The ground was, that the jury had rendered a higher verdict than the facts authorized. It was argued that the season was very unfavorable, and that a great deal of the pork packed at Cincinnati and elsewhere spoiled. That it was impossible to expel the animal heat from the meat, before it was necessary to 'salt it to prevent it from spoiling. That the jury had misapprehended the facts, as, if they had found for the plaintiffs at all, they could not have assessed the damages at the sum returned in their verdict. On the other side, the plaintiffs' counsel contended that the

[1] [Reported by Hon. John McLean, Circuit Justice.]

.damages should, or at least, they might have been higher. That they must have omitted some of the items claimed. And this was attempted to be demonstrated by the items of damages claimed, showing the price of the pork sold as unsound, and comparing it with the price for which a sound article sold at Cincinnati.

BY THE COURT. There is no particular complaint as to the charge of the court. Specific charges were asked, and the court gave general instructions to the jury, embracing the points on which instruction was asked. This is a better mode, as the jury will see the views of the evidence applying to the case in connection with the law. The charge being delivered, no exception was taken to any part of it, nor was it intimated that any one of the points in the instruction prayed, had been omitted. This was necessary, if there was any objection to the instruction, as the court, by having its attention directed to the particular point noted, might correct or modify the instruction. Not long since, in a similar case, the court permitted an exception to be taken which had not been made when the charge was given; and although the decision of this court was affirmed in the supreme court, yet it subjected the plaintiff to delay and expense. Being convinced that an error in law is a matter of strict right, I determined that a strict practice, in justice, was required; and, consequently, where the matter of exception is not noted during the trial, a bill of exceptions will not be allowed afterwards.

In regard to the verdict of the jury in this case, if the verdict had been for a less sum, the court would not have set it aside for that cause. The jury were instructed that if they should find the defendants had been negligent in putting up the pork, the damage to the plaintiffs would be, the difference in the Cincinnati market between sound articles and those which were sold in that market as unsound. And that the pork shipped to New Orleans could only be examined at that port to ascertain its true condition when it was delivered at Cincinnati. That the Cincinnati market afforded the datum for an estimation of the damages.

After a deliberate revision of the evidence, the charge of the court, and the verdict, we are not brought to the conclusion that the verdict of the jury is against evidence. The weather was, undoubtedly, very unfavorable for pork packing the season this pork was packed; but the experience and skill of the defendants as packers were relied upon, and they should have acted under a knowledge of such a responsibility. Under such circumstances, the skill of the defendants is specially required. They should have declined killing the hogs, if they did not believe the pork could be saved. After this advice, had the plaintiffs directed them to kill and pack the pork, they would have been exonerated

from any liability, had they put up the pork as carefully and skilfully as could be done by persons acquainted with the business. We do not feel ourselves authorized to set aside the verdict; the motion for a new trial is, therefore, overruled, and judgment on the verdict.