**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Miguel Saiz MONROY, Celso Rene Sanchez, a/k/a Raul Brito, Hernan Ahumada, Manuel Ospina, Lorenzo Robledo Garcia and Jairo Longaray, Defendants-Appellants.**

**No. 79–5029.**

United States Court of Appeals, Fifth Circuit.

March 19, 1980.

Curtis Fallgatter, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Louis R. Hardin, Jr., Jacksonville, Fla. (Court-appointed), for Monroy.

David R. Fletcher, Jacksonville, Fla. (Court-appointed), for Sanchez.

William F. Kachergus, Jacksonville, Fla. (Court-appointed), for Ahumada.

Wayne E. Flowers, Jacksonville, Fla. (Court-appointed), for Ospina.

William J. Dorsey, Jacksonville, Fla. (Court-appointed), for Garcia.

Edward W. Dawkins, Jacksonville, Fla. (Court-appointed), for Longaray.

Before COLEMAN, Chief Judge, KRA-VITCH and HENDERSON, Circuit Judges.

COLEMAN, Chief Judge.

On August 8, 1978, the six appellants, Enrique Yabur, and sixteen other crewmembers were arrested on board the *Heidi* on the high seas, off the East coast of Florida. Along with nine land-based defendants, they were indicted on one count of conspiracy to import marijuana and one count of conspiracy to possess with intent to distribute marijuana. The crewmembers were tried separately from the land-based defendants. In a jury trial the appellants and Yabur were convicted of the importation and acquitted of conspiracy. The remaining crewmembers were acquitted on all counts.[1]

The appellants raise numerous issues. Only one merits discussion: the contention that the Coast Guard's warrantless search of the *Heidi* violated the Fourth Amendment; therefore, the 225,469 pounds of marijuana found aboard should have been suppressed.

In June, 1978, two Drug Enforcement Agency (DEA) undercover agents began discussing with several of the land-based defendants the possibility of importing marijuana from Colombia to Florida. The agents agreed to furnish the boats with which to transport the marijuana from the mothership at sea to the Florida coast.

One of the land-based defendants traveled to Colombia and arranged for a ship named the *American Merchant* to be loaded with marijuana. Upon his return he furnished a sketch of the vessel and described its appearance in detail. Finally, after a number of changes, the group agreed upon the coordinates for the unloading at sea. The DEA informed the Coast Guard of the vessel description and of the coordinates.

Meanwhile, on May 26, a ship named the *Mereghan II* arrived at the island of Aruba in the Netherlands Antilles. A Colombian replacement crew, which included the appellants, began boarding on June 7. The ship then sailed to Cartagena, Colombia.

On the afternoon of August 5, a Customs Service pilot observed the *Heidi* loitering, riding low in the water off the Mantanilla Shoal on the west end of the Little Bahama Banks. The pilot informed the Coast Guard and remained at the scene until the Coast Guard cutter *Cape Knox* arrived. The *Cape Knox* noted that the vessel was flying no flag and that it matched the mothership description which one of the land-based defendants had earlier given the DEA undercover agent.

The *Cape Knox* followed the *Heidi* as it sailed on various courses and distances. At 6:30 a. m. on August 6, while within half a mile of the *Heidi*, the *Cape Knox* retrieved from the water a small bale which proved to be two pounds of marijuana which had been in the water for about seven minutes.

At 7:00 a. m. the *Cape Knox* contacted the *Heidi* by radio. The *Heidi* stated that its home port was Willemstead, Netherlands Antilles; its last port of call was Colon, Panama; its next port of call was Hamilton, Bermuda; its cargo consisted of hi-fi equipment and spices; and its call sign was 2PQE1.

The *Cape Knox* talked to the *Heidi* again at 6:30 a. m. on August 7, receiving the same answers although there was some hesitancy in revealing the next port of call. In addition, the *Heidi* gave the name of its agent in Panama. At 3:00 p. m. the *Cape Knox* communicated with the *Heidi* for a third time.

Checking through diplomatic channels, the Coast Guard learned that the *Heidi* was not registered in the Netherlands Antilles, as it had claimed, or in the United Kingdom, as its call number had indicated. The Coast Guard also discovered that the *Heidi's*

---

1. One land-based defendant pled guilty. The other eight were convicted. Their separate appeal is pending, *United States v. Pool*, 5th Cir., No. 79–5242.

alleged agent in Panama did not exist. With this information the Commandant of the Coast Guard decided that the *Heidi* was a stateless vessel and could be boarded for a determination of its documentation and registry.

Around sunset, the *Cape Knox* received the Commandant's permission to board the *Heidi*, but because of darkness the boarding was delayed until the next morning. At 7:12 a. m. on August 8, having gained permission from a *Heidi* crewmember who presented himself as the captain, Coast Guard Ensign Gary McGlone boarded the *Heidi*. The *Heidi* was within 150 miles of the offload coordinates.

While searching the bridge for registration papers, McGlone noted that the name "*Heidi*" had been freshly painted. Finding no documents on the bridge, McGlone proceeded to the captain's cabin, located below decks. Upon descending the ladder into the hold, he detected a strong odor of marijuana. McGlone discovered the controlled substance in the aft and forward food storage lockers and in the number one and two cargo holds. In all, 225,469 pounds of marijuana were stowed on the ship. Continuing the search, McGlone found several items, such as life preservers, with the name "*Mereghan II*" etched on them.

Conceding that the Coast Guard had probable cause to stop and search the *Heidi*, the appellants contend that the Fourth Amendment required the Coast Guard to obtain a search warrant before boarding the vessel. The argument is that probable cause existed several days before the search and the Coast Guard thus had ample time to obtain a warrant.

The appellants rely heavily upon *dicta* in *United States v. Conroy*, 589 F.2d 1258 (5th Cir., 1979). In that case the Coast Guard cutter *Dauntless* located the *Nahoa*, an American vessel which the Coast Guard had probable cause to believe was carrying marijuana. The *Nahoa* fled and stopped only after the *Dauntless* threatened to shoot. The Court upheld the warrantless search but added, "[W]e may assume, arguendo, that a warrant would have been necessary had the *Nahoa* docilely continued on its course, approached the *Dauntless* and, upon being hailed, submitted to a search." *Id.* at 1269.

In the present case the *Heidi* behaved in a manner somewhat like that of the *Nahoa*. Nevertheless, the language appearing as to the possible necessity of a search warrant for the *Nahoa* stated that such an assumption was only noticed *arguendo*.

The appellants also rely on *dicta* appearing in *United States v. Cadena*, 585 F.2d 1252 (5th Cir., 1978). Undercover DEA agents, who had just unloaded some marijuana from a foreign vessel, the *Labrador*, on the high seas, summoned the Coast Guard cutter *Dauntless*, which ordered the *Labrador* to halt. The *Labrador* fled, stopping only after the *Dauntless* opened fire. The Coast Guard then boarded and searched the *Labrador*.

Concerning this search the Court stated: "Here, the government clearly had probable cause to search. Appellants do not contest this, but contend instead that probable cause existed several days before the search; hence there could be no exigent circumstances that would excuse the failure to secure a warrant". *Id.* at 1263. Agreeing that probable cause had existed and believing that the *Labrador's* flight had created exigent circumstances, the Court upheld the warrantless search but added, "Had the Coast Guard vessel been waiting in ambush for the foreign vessel, and seized it *only* on the basis of information known to it for a considerable length of time without exigent circumstances, its failure to obtain a prior warrant would be of greater significance [emphasis in original]". *Id.* at 1263. The appellants claim that because the *Heidi* never made any attempt to flee, there were no exigent circumstances at the time of the search, hence *United States v. Cadena*, 585 F.2d 1252 (5th Cir., 1978), condemns the warrantless search of the *Heidi*.

Government agents had advance knowledge that the *American Merchant*, if encountered, would be carrying marijuana, but this was not the vessel seen, boarded, and searched, unless the name *American*

*Merchant* had been changed first to *Mereghan II* and thereafter to *Heidi*, the freshly painted name displayed on the offending vessel, which clearly appears to have been the case in the light of later known facts. Even more importantly in a search warrant context, if the agents knew of the *Mereghan II* leaving for Colombia on June 7 that vessel was not again seen until August 5, almost two months later.

■ It seems clear to us that the boarding and search of the stateless *Heidi* was clearly proper under the teachings of *United States v. Cortes*, 588 F.2d 106 (5th Cir., 1979).

In that case the Coast Guard cutter *Alert* encountered a vessel flying no flag and displaying no name. The *Alert* approached the vessel and inquired as to her nationality. The vessel claimed to be registered in British Honduras, and the *Alert* ceased surveillance. Later the Coast Guard learned that no such ship was registered in British Honduras.

Three days later the Coast Guard cutter *Cape Shoalwater* came upon the same vessel. In response to the *Cape Shoalwater's* inquiry concerning her nationality, the vessel claimed to be from Colombia. The Coast Guard operations center in Miami ordered the commander of the *Cape Shoalwater* to board the vessel in order to determine her nationality.

After boarding the vessel and failing to locate the registration papers, the Coast Guard personnel descended into the hold to locate the main beam number. In the hold the Coast Guard officers detected the odor of marijuana and then discovered boxes containing the controlled substance.

In upholding every step of this process, the Court first stated that the Coast Guard had the authority under the rule of international law known as the Right of Approach to sail up to the unidentified vessel to as-

certain her nationality. After communicating with the operations center the *Cape Shoalwater* had the justifiable suspicion that the vessel was attempting to conceal its identity and activities. Because the crew failed to furnish registration papers, the limited search for identification was reasonable. The odor of marijuana provided probable cause for a wider search, and although the vessel was anchored at the time, *exigent circumstances were present* in its inherent mobility and the possibility that it would flee.

■ The appellants also make a second, much weaker argument. They claim that the boarding and search were invalid under the Convention on the High Seas, 450 U.N. T.S. 82, 13 U.S.T. 2312, T.I.A.S. No. 5200. In response, the government observes that the Convention does not apply to stateless vessels. *United States v. Cadena*, 585 F.2d 1252, 1260, n. 15 (5th Cir., 1978), and that neither Colombia, the appellants' country of nationality, nor Panama, the country where the *Heidi* was eventually determined to have been registered, has ratified the treaty. See Treaties in Force (1978) at 326. We find no merit in this second argument.

As already pointed out, appellants concede the existence of probable cause to stop the *Heidi* and search it. That being so, we hold that under the facts of this case no search warrant was required.[2] That is all that is required for the appropriate disposition of this appeal.

AFFIRMED.

---

**2.** The issue of whether a search warrant is ever required for an otherwise lawful seizure and search on the high seas is presently under submission to the Court, *en banc*, No. 78–5413, *United States v. Frank Gunnar Williams* (orally argued January 7, 1980).

As to vessels flying the American flag, see *United States v. Warren* (en banc), 578 F.2d 1058 (5th Cir., 1978).