P. Kevin Castel, United States District Judge
Defendants Hubert Angulo Cuero and Nestor Murillo Bocanegra are charged in a two-count indictment with (1) participating in a conspiracy to manufacture and distribute, and possess with intent to manufacture and distribute, five or more kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, and (2) manufacturing and distributing, and possessing with intent to manufacture and distribute, five or more kilograms of cocaine on board a vessel subject to the jurisdiction of the United States in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), 70506(a) - (b). In a motion joined by Cuero, Bocanegra has moved to dismiss the indictment on the grounds that defendants' conduct did not occur "on the high seas," and that the government has failed to allege a sufficient nexus between the offense and the United States. For the reasons explained below, defendants' motion is denied.
BACKGROUND
The defendants' vessel was interdicted by the Colombian Navy on February 19, 2015, approximately 20 nautical miles off the coast of the Colombian island of Malpelo. (Brooks Aff. ¶ 15; Govt. Mem. 2.) In his memorandum, Bocanegra states that he was apprehended 26 nautical miles *85 off the coast of Maleplo Island. (Bocanegra Mem. 2.) However, this apparent dispute is immaterial for purposes of this motion because both parties agree that defendants were interdicted outside of Colombia's "territorial waters," the twelve miles of water surrounding a coastal nation over which that country possesses sovereignty, see United States v. Carvajal, 924 F.Supp.2d 219, 233-34 (D.D.C. 2013), aff'd sub nom. United States v. Miranda, 780 F.3d 1185 (D.C. Cir. 2015) (citing United States v. Ledesma-Cuesta, 347 F.3d 527, 530 n.3 (3d Cir. 2003) and Territorial & Maritime Dispute (Nicar. v. Colom.), 2012 I.C.J. No. 124, ¶ 177 (Nov. 19) ("ICJ Decision") ), and within Colombia's Exclusive Economic Zone ("EEZ"), the two hundred mile band of ocean over which coastal nations exercise certain economic rights but not sovereignty. See Carvajal, 924 F.Supp.2d at 234 ; United States v. Matute, No. 06 Cr. 20596, 2013 WL 6384610, at *6 (S.D. Fla. Aug. 20, 2013), report and recommendation adopted, No. 06 Cr. 20596, 2013 WL 6212170 (S.D. Fla. Nov. 27, 2013) (citing ICJ Decision ¶ 177).
Colombian Navy personnel observed "no indicia that the speed boat carried the flag of any country or had otherwise been registered in any nation." (Brooks Aff. ¶ 15.) In addition, none of the crew made any claim of registry with respect to the vessel at the time of interdiction. (Id. ) After searching the vessel, the Colombian Navy discovered approximately 350 kilograms of cocaine as well as identification documents for each of the defendants. (Id. ¶ 16.) Defendants were arrested by Colombian law enforcement authorities and were initially detained in Colombia on charges under Colombian law. (Id.; Govt. Mem. 3.) However, because the vessel had been interdicted in international waters without a nationality, the United States assumed jurisdiction over the vessel and crew, and defendants were extradited by Colombia on November 9, 2016.[1] (Brooks Aff. ¶ 17; Govt. Mem. 3.)
The indictment charges defendants with violating the MDLEA "upon the high seas outside of the jurisdiction of any particular State or district of the United States." (Indictment ¶ 1.) Specifically, defendants are charged with manufacturing, distributing, and possessing with intent to manufacture and distribute, five or more kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, and conspiring to do the same. (Id. ¶¶ 3-4.)
The MDLEA definition of a "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. § 70502(c). A "vessel without nationality" is in turn defined to include:
(A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
(B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.
Id. § 70502(d). Additionally, the MDLEA limits the ways in which a vessel *86 can make a claim of nationality or registry to the following three methods:
(1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas;
(2) flying its nation's ensign or flag; or
(3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.
Id. § 70502(e). Finally, courts have held that the MDLEA's definition of a "vessel without nationality" also includes vessels considered stateless under international law. See Carvajal, 924 F.Supp.2d at 235 ; United States v. Matos-Luchi, 627 F.3d 1, 4 (1st Cir. 2010) ; United States v. Henriquez, 731 F.2d 131, 134 n.5 (2d Cir. 1984) ("the term 'vessel without nationality' clearly encompasses vessels not operating under the authority of any sovereign nation").
The MDLEA specifically provides for extraterritorial application, see 46 U.S.C. § 70503(b), and states that the "[j]urisdiction of the United States with respect to a vessel subject to [the MDLEA] is not an element of an offense." Id. § 70504(a). Rather, "[j]urisdictional issues ... are preliminary questions of law to be determined solely by the trial judge." Id.
DISCUSSION
Defendants assert that the indictment should be dismissed for lack of jurisdiction and violations of due process. Specifically, defendants argue that because their boat was stopped within Colombia's EEZ, the alleged conduct did not occur "on the high seas" as required by the MDLEA. In addition, defendants claim that the government has failed to show a sufficient nexus between the offense and the United States such that prosecution in this country offends the Fifth Amendment guarantee of due process of law.
I. Statutory Jurisdiction.
Congress enacted the MDLEA pursuant to "its constitutional power to define and punish Piracies and Felonies committed on the [H]igh Seas." Matos-Luchi, 627 F.3d at 3 (citing U.S. Const. art. I § 8, cl. 10 ) (internal quotation marks omitted). According to defendants, because their boat was apprehended within the Colombian EEZ, they were not on the high seas and may not be prosecuted under the MDLEA. However, in the context of MDLEA prosecutions, courts have repeatedly rejected the argument that the high seas do not encompass a country's EEZ, and instead set the boundary of the high seas at the edge of a country's twelve-mile territorial waters. See id. at 2 n.1 (interdiction 35 miles from the coast of the Dominican Republic was "outside Dominican territorial waters and considered the 'high seas' for purposes of the Coast Guard's enforcement jurisdiction," despite being within the Dominican Republic's EEZ); Carvajal, 924 F.Supp.2d at 234 n.7 (rejecting argument that the "high seas" begin outside the 200-mile exclusive economic zone); Matute, 2013 WL 6384610, at *6 ("crimes committed in the EEZ are treated as occurring on the high seas"); see also United States v. Prado, 143 F.Supp.3d 94, 97 (S.D.N.Y. 2015) (noting that in the context of the Death on the High Seas Act, the Second Circuit has defined the "high seas" as those waters outside of the territorial waters of a country) (citing In re: Air Crash Off Long Island, N.Y., on July 17, 1996, 209 F.3d 200 (2d Cir. 2000) ).
As support for their position that the United States may not prosecute individuals who are apprehended in a foreign country's EEZ, defendants rely primarily on *87 the Eleventh Circuit's decision in United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012) (finding MDLEA unconstitutional as applied to defendants interdicted within Panama's territorial waters) and the definition of the "high seas" in the United Nations Convention on the Law of the Sea ("UNCLOS").
Defendants' reliance on Bellaizac-Hurtado is misplaced. Bellaizac-Hurtado concerned a defendant who was apprehended on a vessel within Panama's territorial waters, 700 F.3d at 1258, whereas defendants' vessel was seized approximately 20 nautical miles off the coast of a Colombian island, placing them within Colombia's EEZ but outside of its territorial waters. See United States v. Montano Preciado, No. 14 Cr. 874, 2016 WL 4184304, at *3 (S.D.N.Y. Aug. 4, 2016) (declining to follow Bellaizac-Hurtado where defendant was not interdicted in foreign territorial waters); Cuero v. United States, No. 13 Civ. 1305-T-27, 2013 WL 2352224, at *3 (M.D. Fla. May 29, 2013) (same); Matute, 2013 WL 6384610, at *6 (same). In fact, the Court in Bellaizac-Hurtado reaffirmed the constitutionality of the MDLEA as applied to offenses committed on the high seas. See Bellaizac-Hurtado, 700 F.3d at 1257.
Similarly, defendants' citation to the UNCLOS is unpersuasive. Article 86 of the UNCLOS defines the "high seas" as "all parts of the sea that are not included in the exclusive economic zone, in the territorial sea or in the internal waters of a State ...." See UNCLOS art. 86, Dec. 10, 1982, 21 I.L.M. 1245, 1286. However, as many courts have recognized, "[t]here is simply no support for the proposition that Article 86 [extended countries'] sovereignty through the EEZ." Matute, 2013 WL 6384610, at *6 (defendant arrested 90 miles off the coast of Colombia was on the "high seas" and not in Colombia's territorial waters); Carvajal, 924 F.Supp.2d at 234 n.7 (recognizing that the UNCLOS provides "some authority" for the proposition that the "high seas" begin outside the EEZ, but declining to adopt that definition because "defining the 'high seas' as those waters beyond any country's sovereignty is the better reasoned understanding that has long been in use."). Chief Judge McMahon recently characterized the UNCLOS definition as "clumsily" written and noted that "various articles of UNCLOS maintain the distinction between the 'EEZ' and 'high seas' " and "almost all of [UNCLOS's] high-seas provisions apply with equal force inside the EEZ as they do outside it." Montano Preciado, 2016 WL 4184304, at *2 (quoting United States v. Beyle, 782 F.3d 159, 167 (4th Cir. 2015) ).
The Court sees no reason to depart from this consensus and concludes that the EEZ beyond the territorial waters of a country constitutes the high seas for the purposes of the MDLEA. Therefore, because defendants were arrested on the high seas, and not in Colombia's territorial waters, they may be prosecuted under the MDLEA.
II. Due Process.
Defendants also argue that their prosecution violates the Due Process Clause of the Fifth Amendment because it is arbitrary and fundamentally unfair. "[I]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003) (quoting United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990) ). According to defendants, no nexus exists because neither the defendants nor the drugs were en route to the United States. (Bocanegra Mem. 7.)
*88 The Court need not engage in a nexus analysis under Yousef because defendants' vessel was stateless. See United States v. Moreno-Morillo, 334 F.3d 819, 829 (9th Cir. 2003) ("If a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them."); United States v. Pinto-Mejia, 720 F.2d 248, 260-61 (2d Cir. 1983) ("we find no authority in international law for requiring any nexus where the ship otherwise would be subject to the jurisdiction of no state"). In the Second Circuit "stateless vessels on the high seas are, by virtue of their statelessness, subject to the jurisdiction of the United States ... even absent proof that the vessel's operators intended to distribute their cargo in the United States." Henriquez, 731 F.2d at 134 (quoting Pinto-Mejia, 720 F.2d at 260-61 ). As Judge Rakoff recently wrote:
The reasoning behind the jurisdictional holdings of Henriquez and Pinto-Mejia also informs, and in a sense modifies, Yousef's due process nexus requirement in the case of stateless vessels. The "ultimate question" of the Due Process Clause analysis is "would application of the statute to the defendant be arbitrary or fundamentally unfair?" United States v. Davis, 905 F.2d 245, 249 n. 2 (9th Cir. 1990). It is well-settled that "[v]essels without nationality are international pariahs," and those aboard stateless vessels lack the protections of any country's law. United States v. Pinto-Mejia, 720 F.2d 248, 261 (2d Cir. 1983) (quoting United States v. Marino-Garcia, 679 F.2d 1373, 1382 (11th Cir. 1982) ). It is not arbitrary or fundamentally unfair to prosecute those who have renounced the legal world and "constitute a potential threat to the order and stability of navigation on the high seas." Id.
Prado, 143 F.Supp.3d at 98.
Defendants argue that they "could not have reasonably anticipated being brought before a court in the United States in connection with [their] alleged conduct in Colombia." (Bocanegra Mem. 8.) However, "[f]air warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." United States v. Al Kassar, 660 F.3d 108, 119 (2d Cir. 2011). As was the case in Carvajal, "[t]hese defendants were on notice that, by using a stateless vessel to transport narcotics across the high seas, they were opening themselves to the possibility of prosecution." 924 F.Supp.2d at 263. Moreover, defendants were extradited by the Colombian government, which "demonstrates approval of the United States's criminal proceedings against Defendants." Id. at 263-64.
The government contends that the defendants' vessel was stateless because Colombian Navy personnel observed "no indicia that the speed boat carried the flag of any country or had otherwise been registered in any nation," (Brooks Aff. ¶ 15), and none of the defendants made any claim of registry for the vessel at the time it was stopped. (Id. ) The defendants have not disputed these facts or the government's characterization of the vessel as stateless.[2] As such, the Court finds that defendants' vessel was stateless, see, e.g., Prado, 143 F.Supp.3d at 99 (vessel was stateless where a Coast Guard search *89 found no registration documents on board, the vessel had minimal, if any, identifying features, and defendants identified themselves, but not their boat, as Ecuadorian), and therefore no nexus to the United States is required for prosecution to be constitutional.
CONCLUSION
For the foregoing reasons, defendants' motion to dismiss the indictment (Dkt. 39) is DENIED.
SO ORDERED.

Bocanegra claims that he was interdicted on February 20 , 2015 and extradited to the United States "[o]n or about November 10 , 2016." (Bocanegra Mem. 2.) Again, these discrepancies are immaterial to the motion at hand.

The government raised the issue of statelessness in its memorandum in opposition to defendants' motion to dismiss; defendants did not submit a reply and the deadline for a response has passed. (See Transcript of Feb. 21, 2017 Conference, Dkt. 42.)